UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROSA E COLLADO,**<br><br>    Plaintiff,<br><br>    v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    Defendant. | Civ. No. 19-13458 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Rosa Collado, brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

The decision appealed from was partially favorable to Collado. The Administrative Law Judge ("ALJ") found that Collado was disabled and awarded benefits starting from a disability onset date of October 9, 2015. The ALJ found that Collado was not disabled, however, prior to that date. It is from that latter determination that Collado appeals.

For the reasons stated below, the decision of the Commissioner is **AFFIRMED**.

I. **BACKGROUND**[1]

In July 2015, Collado filed an application for DIB, alleging she had been disabled since July 31, 2014, when she was 52 years old, and suffered from a

---

[1] Citations to the record are abbreviated as follows:

"DE _" = Docket entry in this case;

"R. _" = Administrative Record (DE 5) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 5 attachments);

"Pl. Brf." = Plaintiff Collado's Moving Brief (DE 12)

variety of impairments. (R. 65, 173–76.) Most of her impairments related to neck and back injuries she suffered in a motor vehicle accident in 2006 (R. 536–37) and cerebral dysfunction, psychological distress, and pain therefrom (R. 402–03). She also had a history of diabetes mellitus, hyperglycemia, obesity, chronic pain syndrome, and abscesses in her back. (R. 469–70, 472, 512, 517.)

Her DIB application was denied initially and on reconsideration. (R. 104–09, 113–19.) Collado requested a hearing, which was held on March 23, 2018. (R. 31–64.) Collado, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 31–64.)

On June 21, 2018, the ALJ issued a partially favorable decision, finding Collado disabled as of October 9, 2015. (R. 16–26). Prior to October 9, 2015, the ALJ found that Collado the evidence did not support the alleged severity of her symptoms. (R. 24–25.) On May 30, 2019, the Appeals Council denied Collado's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1–6.) This appeal followed.

## II.  DECISION FOR REVIEW

### A. The Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920.  In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing

---

"Def. Brf." = Defendant's Brief (DE 17)

of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Decision

The ALJ followed the five-step process in determining that Collado was not disabled from July 31, 2014, the alleged onset date, until October 9, 2015, but became disabled as of that date. The ALJ's findings may be summarized as follows:

At step one, the ALJ found that Collado had not engaged in substantial gainful activity since her alleged disability onset date (July 31, 2014). (R. 18.)

At step two, the ALJ found that Collado had severe impairments of diabetes mellitus, degenerative disc disease of the cervical, thoracic, and lumber spine, chronic pain syndrome, major depressive disorder, and anxiety disorder since her alleged disability onset date. (R. 18.)

At step three, the ALJ determined that none of Collado's impairments, alone or in combination, met or equaled all of the criteria of a listing (R. 19.) The ALJ explicitly considered listings for spinal disorders, depression and anxiety. (R. 19.)

At step four, the ALJ found that, prior to October 9, 2015, Collado could perform a limited range of light work. (R. 19.) Beginning October 9, 2015, the ALJ found that Plaintiff's RFC assessment was the same except that Plaintiff would be off task 20% of the workday. (R. 22.) The ALJ relied principally on an October 2015 report from psychologist Dr. Gupta which "found her to have decreased memory, distracted, social anxiety with less communication, constricted affect, and depressed and anxious mood." (R. 23.) Dr. Gupta made similar findings in May 2016, thus indicating that her mental impairments continued. (R. 23.) The ALJ determined that Collado could not perform her past relevant work as a parking lot attendant, car wash attendant, roofer, or fast food worker (R. 24.)

At step five, relying on the testimony of a VE, the ALJ determined that Collado, prior to October 9, 2015, was capable of performing other jobs existing in significant numbers in the national economy, including the representative unskilled, light jobs of call out operator, mail clerk, small products assembler, and office helper, prior to October 9, 2015. (R. 30–31.) For the period beginning October 9, 2015, the ALJ found, there were no representative jobs existing in significant numbers in the national economy that Collado could perform (R. 25–26.) Thus, the ALJ found Collado not disabled prior to October 9, 2015, but disabled from October 9, 2015, through the date of the decision. (R. 26.)

## III.   DISCUSSION

Collado raises two issues: (A) whether the ALJ erroneously found that she was disabled only for the period beginning October 9, 2015, when her

4

physical and mental impairments were present earlier; and (B) whether the ALJ erroneously found that her impairments did not meet or equal any listed impairment.

### A. Onset Date

Collado argues that the ALJ's finding that she was disabled beginning October 2015 is erroneous because it is based on the faulty logic that her symptoms began when they were diagnosed. (Pl. Brf. at 14–28.) That is, she argues that her physical and mental impairments existed prior to her October 2015 diagnosis, so the onset of her disability must be earlier. (*Id.*)

As to her physical impairments, Collado argues that she presented in October 2015 with difficulties getting on and off the examining table, flexing, fully squatting, and walking on her heels and toes, and she used a cane. (Pl. Brf. at 15 (citing R. 584).) Collado contends that these symptoms, as presented in October 2015, are incompatible with a finding that she was able to perform light work from July 2014 (her alleged onset date) to October 2015. (Pl. Brf. at 16–18.)

Collado misunderstands the ALJ's findings and reasoning. The ALJ's finding of disability did not rest primarily on her physical limitations. In fact, the ALJ found that her physical limitations were fairly consistent both before and after October 2015. (*Compare* R. 19–20, *with* R. 22.) What tipped the balance to disability was the record of a psychological evaluation in October 2015 which indicated that Collado would be off-task 20% of the workday due to depression and anxiety. (R. 22.)[2] Accordingly, her arguments regarding her physical limitations do not call into question the ALJ's disability finding and assignment of an onset date.

---

[2]   Regardless, the ALJ's finding that Collado could physically perform light work as of October 2015 was supported by substantial evidence, which showed that Collado had full muscle strength, normal sensation, normal reflexes, full grip strength, full manipulative functions, full range of motion in her neck and knees (R. 584.) Further, the ALJ noted that Collado's cane was not medically necessary; rather, she requested that it be prescribed. (R. 22–23; *see also* R. 84, 584.)

As to her mental impairments, Collado relies (at 25–26) on Social Security Ruling ("SSR") 83-20, which provides that "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling . . . . when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available." SSR 83-20, 1983 WL 31249, at *2 (Jan. 1, 1983).[3] SSR 83-20 further provides that, in such cases, the ALJ must "infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process," *id.*, and, in some instances, "should call on the services of a medical advisor," *id.* at *3; *see also Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 549 (3d Cir. 2003) (construing SSR 83-20); *Walton v. Halter*, 243 F.3d 703, 709–10 (3d Cir. 2001) (same).

"Mental illness may be a 'slowly progressive impairment,'" *Kidd v. Comm'r of Soc. Sec.*, 785 F. App'x 910, 913 (3d Cir. 2019), but a medical advisor is not required unless the medical records from which to infer an onset date are ambiguous or unavailable. *See, e.g.*, *Atkins on behalf of Atkins v. Comm'r of Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020); *Kushner v. Comm'r of Soc. Sec.*, 765 F. App'x 825, 830 (3d Cir. 2019); *Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 205 (3d Cir. 2008). "[A]n ALJ can reasonably determine an onset date where the ALJ has access to adequate medical records relating to the

---

[3] Social Security Rulings "are binding on all components of the Administration," yet "do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same." *Allen v. Barnhart*, 417 F.3d 396, 402 n.3 (3d Cir. 2005) (citations omitted). They "may be superseded, modified, or revoked by later . . . regulations, court decisions or rulings." *Id.* (citation omitted). Indeed, SSR 18-01p replaced SSR 83-20 in October 2018. 83 Fed. Reg. 49,613 (Oct. 2, 2018). The new regulation "clarifies that an [ALJ] may, but is not required to, call upon the services of a medical expert (ME), to assist with inferring the date that the claimant first met the statutory definition of disability." *Id.* It provides specifically that "[t]he decision to call on the services of an ME is *always* at the ALJ's discretion." *Id.* at 49,616 (emphasis added). However, SSR 18-01p only applies after October 2, 2018 and is not retroactive to Collado's case, in which the decision was issued in June 2018. *Id.*; *see also Kidd v. Comm'r of Soc. Sec.*, 785 F. App'x 910, 912 n.1 (3d Cir. 2019) (declining to apply SSR 18-01p retroactively).

6

relevant time period." *Davis v. Comm'r of Soc. Sec.*, Civ. No. 18-17126, 2019 WL 4686818, at *5 (D.N.J. Sept. 26, 2019) (citing *Jakubowski v. Comm'r of Soc. Sec.*, 215 F. App'x 104, 108 (3d Cir. 2007)). And as always, the ultimate question for this Court is whether the ALJ's determination of the onset date is supported by substantial evidence. *See, e.g., Kidd*, 785 F. App'x at 912–13.

The ALJ found that, as late as July 2015, evidence (namely, observations made at the field office) showed that Collado could attend appointments alone, complete interviews, and receive phone calls. (R. 22; *see also* R. 185.) The first substantial evidence in the record of mental impairments that impacted her RFC comes from Dr. Gupta's October 2015 consultation, where the psychologist "found her to have decreased memory, distracted, social anxiety with less communication, constricted affect, and depressed and anxious mood." (R. 23.) Dr. Gupta made similar findings in May 2016, thus indicating that her 2015 mental impairments persisted. (*Id.*) In primary care visits, Collado herself consistently denied depression and anxiety in July, August, and September 2015 (R. 491, 630, 635), but did complain of depression and anxiety in 2016 and 2017 (R. 673, 678, 682, 687, 691).

Thus the October 2015 date, in addition to being the initial psychological diagnosis, roughly corresponds with Ms. Collado's initial reports of symptoms of depression, anxiety, and concentration issues to any provider. The ALJ's onset date is supported by substantial evidence.

### B. Listed Impairments

Collado contends that the ALJ's analysis at step three committed a number of errors, namely that the ALJ (1) wrongly concluded that her spinal impairments did not meet the relevant listing criteria, (2) wrongly concluded that her anxiety and depression did not meet the listed criteria, (3) did not consider her diabetes, and (4) did not consider her obesity. (Pl. Brf. at 28–36.) I address each issue in turn but first explain three important principles that belie Collado's step-three arguments.

First, while the ALJ must "set forth the reasons for [the] decision" and discuss the evidence, *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000), the ALJ need not "use particular language or adhere to a particular format"; rather, the Third Circuit requires only "sufficient development of the record and explanation of findings to permit meaningful review," *Jones*, 364 F.3d at 505. Indeed, the ALJ's reasoning may be gathered from elsewhere in the decision, *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379 (3d Cir. 2004), and the specific listings or criteria need not always be identified, *Wisniewski v. Comm'r of Soc. Sec.*, 210 F. App'x 177, 180 (3d Cir. 2006).

Second, the claimant bears the burden to "provide sufficient medical evidence . . . to show that her impairment is equal in severity to a listed impairment." *Burnett*, 220 F.3d at 120 n.2. Accordingly, when the claimant fails to provide record citations or discussion of the listing and merely contends that the ALJ's findings are inadequate, the Third Circuit has regularly affirmed the ALJ's findings. *E.g.*, *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162–63 (3d Cir. 2008); *Creegan v. Comm'r of Soc. Sec.*, 142 F. App'x 567, 569 (3d Cir. 2005).

Third, and relatedly, the claimant must show how any error in the step-three analysis would "affect the outcome of the case." *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). That principle, akin to a harmless-error rule. has two important implications here: First, it is insufficient for Collado to "repeatedly state[] that [her] circumstances were not compared to the listings" without an explanation of how "an actual discussion of [her] impairments would lead to the conclusion that [she] was disabled at step three." *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016). Second, because the ALJ found that Collado was disabled beginning in October 2015 under step four and five (R. 22–26), any error which Collado identifies based on post-October 2015 evidence is harmless because she already has been found disabled during that period. *See Rutherford*, 399 F.3d at 553; *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016); *see generally Sullivan*

*v. Zebley*, 493 U.S. 521, 525 (1990) (explaining the sequential analysis for steps three, four, and five). That is, a remand on step three is only warranted if she can show that evidence for the period in which the ALJ found that she was not disabled (July 2014, the alleged onset date, to October 2015) supports a finding that she meets a listed impairment that qualifies her as disabled. *See id.*; *see also Arreizaga v. Berryhill*, Civ. No. 17-10631, 2019 WL 851581, at *5 (D.N.J. Feb. 21, 2019).[4]

With these principles in mind, I turn to the alleged errors.

### 1. Spinal Impairments

Collado argues that she meets the criteria for Listing 1.04 ("Disorders of the spine"). (Pl. Brf. at 33.) The ALJ concluded that Collado did not meet Listing 1.04 but, to be sure, did not state Listing 1.04's criteria or how the evidence compared to those criteria. (R. 19.) The ALJ referred to its RFC findings (*id.*), and those findings discuss how Collado had reported some injuries, pain, and swelling (*id.* at 20–21).[5] Yet, Collado's brief provides no record citations or discussion as to how her impairments qualify for Listing 1.04. She thus has not carried her burden to disturb the ALJ's finding. *Garrett*, 274 F. App'x at 162–63; *Woodson*, 661 F. App'x at 766.

Questions of burden aside, substantial evidence supports the ALJ's finding that Collado's impairments did not meet or equal Listing 1.04. "For a claimant to show [the] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Jones*, 364 F.3d at 504

---

[4]  For the most part, Collado seems to understand the application of the harmless-error rule here, as the step-three section of her brief asks that the step-three decision "be reversed for the payment of benefits or remanded in order for the Commissioner to address the errors . . . concerning the period at issue, July 31, 2014-October 8, 2015." (Pl. Brf. at 36.)

[5]  There is more robust evidence, as the ALJ explained in detail, as to the severity of any spinal disorder after October 2015. As explained above, however, I focus on the evidence relevant to Ms. Collado's condition from July 2014 to October 2015, the period for which she was found not disabled.

(quoting *Sullivan*, 493 U.S. at 530 (emphasis in original)). Listing 1.04 requires, among other things, "compromise of a nerve root . . . or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Notably, Collado can point to no evidence of such a compromise, even post-October 2015. For example, there are no diagnostic imaging results or studies. Because such evidence is necessary to qualify for Listing 1.04, and Collado has not pointed the Court to any such evidence, substantial evidence supports the ALJ's finding that she does not meet Listing 1.04 for the pre-October 2015 period. *See Burnett*, 220 F.3d at 120 n.2; *Garrett*, 274 F. App'x at 162–63.

### 2. Mental Impairments

Ms. Collado's brief points the Court to Dr. Gupta's observations of her mental limitations to argue that Listings 12.04 (depression) and 12.06 (anxiety) were satisfied. (Pl. Brf. at 33 (citing R. 581).) However, Dr. Gupta's observations date from October 2015. (R. 581) As explained above, Collado must demonstrate that Dr. Gupta's observations established that she had a listed impairment *prior to October 2015*. Also as explained above, the ALJ's conclusion that her condition worsened at or about that time is supported by substantial evidence. She points to no evidence suggesting a listed impairment prior to October 2015, and thus fails to carry her burden. *See Burnett*, 220 F.3d at 120 n.2.

Again, setting aside questions of the burden of proof, I nevertheless find that substantial evidence supports the ALJ's findings. To qualify for Listings 12.04 or 12.06, Collado must show, among other things, that her depression or anxiety satisfy the criteria in either paragraph B or C of those listings (which are the same for both). 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. Paragraph B requires "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning: 1. Understand, remember, or apply information[;] 2. Interact with others[;] 3. Concentrate, persist, or maintain pace[;] 4. Adapt or manage oneself[.]" *Id.* § 12.04(B) (internal citations omitted); *see also id.* § 12.06(B). The ALJ found that Collado had a moderate

limitation in all four areas (R. 19.), but Collado argues that she qualified for a marked limitation (Pl. Brf. at 33). A "marked limitation" means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(2)(d). A "moderate" limitation means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00F(2)(c). As explained in Section III.B, there was little evidence of mental impairments documented prior to Collado's October 2015 consultation with Dr. Gupta, and her records reveal a consistent denial of any depression symptoms until then. Accordingly, the evidence (or lack thereof) refutes any finding that she was "seriously limited" in Paragraph B's areas of mental functioning. *Id.* § 12.00F(2)(d).

For similar reasons, the record does not support a finding that she qualified under Paragraph C. Paragraph C requires that the depression or anxiety is "serious and persistent" with "a medically documented history of the existence of the disorder over a period of at least 2 years" and evidence of both (1) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s)," and (2) "[m]arginal adjustment," defined as the "minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [her] daily life." *Id.* § 12.04(C) (internal citations omitted); *see also id.* § 12.06(C). As the ALJ explained, there is no "history of one or more years' inability to function outside of a highly supportive living arrangement." (R. 19.) Moreover, there is no "medically documented history" of depression or anxiety "over a period of at least 2 years" prior to October 2015. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C). Thus, substantial evidence supports the ALJ's finding that Collado's mental impairments did not qualify for Listings 12.04 or 12.06.

### 3. Diabetes

Collado next contends that the ALJ failed to consider her diabetes mellitus at step three. (Pl. Brf. at 33.) Diabetes mellitus is not a listed

11

impairment; "[h]owever, the effects of [diabetes mellitus], either alone or in combination with another impairment(s), may meet or medically equal the criteria of a listing in an affected body system(s)." SSR 12-2p, 2014 WL 2472008, at *6 (June 2, 2014).[6] Nonetheless, again, Collado makes no attempt to explain how diabetes mellitus should have affected the ALJ's step-three analysis, so there is no basis for remand. *Woodson*, 661 F. App'x at 766; *see also Perry v. Berryhill*, No. 3:17-CV-1158, 2018 WL 5734692, at *10–11 (M.D. Pa. Nov. 2, 2018) (declining to consider argument that the ALJ failed to consider diabetes at step three because the claimant made no attempt to explain how she might have prevailed at step three with more thorough consideration (citing *Holloman*, 639 F. App'x at 814)). Regardless, at step four, the ALJ explicitly considered her diabetes in combination with her other impairments and symptoms. (R. 20.) *See Fullen v. Comm'r of Soc. Sec.*, 705 F. App'x 121, 123–24 (3d Cir. 2017) (affirming ALJ's step-three analysis when the court could determine that the relevant evidence was considered, albeit explicitly at step four).

### 4. Obesity

Finally, Collado argues that the ALJ did not consider her obesity at step three and, specifically, failed to follow the required analysis pursuant to SSR 02-01p, 2000 WL 628049 (Sept. 12, 2002). (Pl. Brf. at 33–34.) SSR 02-01p provides that, although obesity is not a listed impairment, obesity may (1) increase the severity of other impairments to meet a listing, (2) be the medical equivalent of a listing, or (3) combine with other impairments to be equivalent to a listing. 2000 WL 628049, at *5. Nonetheless, an ALJ should

---

[6] Collado faults the ALJ for not citing SSR 12-2p or following its "mandated analysis." (Pl. Brf. at 33.) But SSR 12-2p only "provides guidance," 2014 WL 2472008, at *1, as to how to "the effects of [diabetes mellitus] . . . *may* meet or medically equal" a listed impairment, *id.* at *6 (emphasis added). Accordingly, courts have rejected any "requirement that [SSR 12-2p] be specifically cited in conducting an analysis." *E.g.*, *Dodson v. Comm'r of Soc. Sec.*, No. 5:18-CV-02263, 2019 WL 6841771, at *2 (N.D. Ohio Dec. 16, 2019).

12

"not make assumptions about the severity or functional effects of obesity" but should "evaluate each case based on the information in the case record." *Id.*

In his decision, albeit in the RFC analysis, the ALJ considered evidence of Collado's obesity prior to October 2015. The ALJ found that Collado's various symptoms (including body pain and diabetes-related symptoms) could reasonably be attributed to her impairments, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to October 9, 2015." (R. 20.) Namely, the ALJ reasoned that the evidence only showed that "she was noted to have complications of neuropathy, obesity, and hyperlipidemia" in a July 2014 consultation for an abscess. (R. 20 (citing R. 303).) The records from that consultation gave no further indication that her obesity contributed to any other impairments. (*See* R. 303–04.) Accordingly, the ALJ considered Collado's obesity prior to October 2015, but there was little "information in the case record" from which to conclude that her obesity met or equaled a listed impairment. SSR 02-01p, 2000 WL 628049, at *5.

Nonetheless, on appeal, Collado points to records from a nurse visit, also in July 2014, wherein obesity is checked off as one mobility limitation (R. 448.), and she faults the ALJ for not explicitly considering that record (Pl. Brf. 35–36). Again, Collado "does not identify specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not," and so she does not identify any reason for remand. *Holloman*, 639 F. App'x at 814. I will assume for the sake of analysis that Collado's brief suggests that her obesity "is of such a level that it results in an inability to ambulate effectively" and may qualify for a corresponding listed impairment. *See* SSR 02-01p, 2000 WL 628049, at *5. However, the ALJ's decision elsewhere weighed the fact that she requested a cane (i.e., it was not recommended to her by a medical professional) and observations in July 2015 that she "did not seem to really use" her cane. (R. 22.) Thus, there is evidence considered by the ALJ to refute any argument that records from her July 2014 nurse visit supported a contrary

13

finding that her obesity equaled a listed impairment related to ineffective ambulation.

### IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is affirmed. A separate order will issue.

Dated: October 6, 2020

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty
United States District Judge**